**UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| MARTIN S. MALINOU,<br><br>Debtor/Appellant,<br><br>vs.<br><br>SEATTLE SAVINGS BANK,<br><br>Appellee. | Case No. 06-544S<br><br>Honorable William E. Smith<br><br>Appeal from Bankruptcy Case No. 06-11456 |

---

**REPLY BRIEF OF APPELLEE**
**SEATTLE SAVINGS BANK**

---

Peter J. Furness (#3608)
Benjamin M. Scungio (#2902)
Lauren F. Verni (#6831)
Brennan, Recupero, Cascione, Scungio & McAllister, LLP
362 Broadway
Providence, RI 02909
Phone: 401-453-2300
Fax: 401-453-2345
Email: pfurness@brcsm.com
bscungio@brcsm.com
lverni@brcsm.com

*Attorneys for Appellee, Seattle Savings Bank*

## INTRODUCTION

Now comes the Appellee, Seattle Savings Bank ("Seattle"), by and through its attorneys, and hereby files the within Reply Brief in response to Appellant/Debtor, Martin Malinou's appeal of the Bankruptcy Court's judgment order dated December 15, 2006 on an emergency hearing on Seattle's Emergency Motion for Relief from Stay in the instant matter. The matter before this Court arises out of a seven-year dispute between the Debtor, his now deceased mother and the current mortgage holder, Seattle. The Debtor and his mother together have commenced four separate bankruptcy cases, along with two Superior Court temporary restraining order proceedings, in an attempt to save the property located at 334 Smith Street, Providence, Rhode Island from foreclosure. Debtor, to present, has not demonstrated any ability to formulate a feasible and confirmable Chapter 13 plan nor has he offered a reasonable and feasible plan to pay the mortgage, real estate taxes or real estate insurance. The outstanding mortgage balance is approximately $300,000.00. The Debtor's abuse of the legal system and herein specifically, the Bankruptcy Code should be stopped and Seattle should be granted immediate relief to foreclose.

## FACTUAL BACKGROUND AND TRAVEL OF THE CASE

### A. Mortgage and Note

Appellant's mother, Etta E. Malinou, now deceased, executed a Home Equity Conversion Adjustable Rate Note (the "Note") on November 15, 1991 to the benefit of Rhode Island Housing and Mortgage Finance Corporation ("RIHMFC"). The Note is further evidenced by Home Equity Conversion Loan Agreement (the "Loan Agreement") between Etta E. Malinou and RIHMFC, dated November 15, 1991 and secured by a mortgage from Etta E. Malinou to RIHMFC, dated November 15, 1991 (the "Mortgage") and recorded in the Office of the Recorder of Deeds of the City of Providence on November 27, 1991 in Book 2482 at Page 89

with respect to the property located at 334 Smith Street, Providence, Rhode Island (the "Property"). (Exhibits 10 and 12, respectively, of Appellant's Record Designation).

The provisions of the Note, the Loan Agreement and the Mortgage create a so-called "reverse mortgage" whereby Etta Malinou received advances under the loan. The loan was due and payable in certain stipulated circumstances as follows:

i. The borrower dies;

ii. The borrower conveys all of his or her title to the property and no other borrower retains title to the property in fee simple or on a leasehold interest;

iii. The property ceases to be the principal residence of the borrower for reasons other than death;

iv. For a period of longer than 12 consecutive months, a borrower fails to physically occupy the property because of physical or mental illness and the property is not the principal residence of at lease one other borrower; and

v. An obligation of the borrower under the security instrument is not performed.

Among the various obligations imposed by the Mortgage, is the requirement that the borrower pay all property charges consisting of taxes, insurance and other assessments in a timely matter. Etta Malinou failed to pay real estate taxes for 1997, 1998 and 1999 and demand was made on behalf of RIHMFC on August 16, 2000 for payment in full of the outstanding balance of the Note. At the same time, a notice to foreclose was given to the borrower with a scheduled foreclosure date of September 28, 2000.

**B. Etta Malinou's Chapter 13 Bankruptcy Proceeding**

On or about September 5, 2000, Etta Malinou filed a Chapter 13 bankruptcy proceeding, which, pursuant to 11 U.S.C. § 362, stayed the foreclosure. (Exhibit 12 of Seattle's Designation of Record on Appeal). An order confirming the debtor's Chapter 13 plan was entered by the Bankruptcy Court on December 20, 2000. Etta Malinou defaulted under the terms of the plan by

failing to make payments proposed under the plan, including her failure to make real estate tax payments. After the plan failed, Etta Malinou filed an amended plan which was approved by the Court on June 3, 2002. Thereafter, Etta Malinou failed again to comply with terms of the amended plan and the trustee subsequently filed a motion to dismiss the case on October 3, 2002. After a few continuances, a hearing was held on February 13, 2003, at which time the Court was informed of the debtor's death in January 2003. An order dismissing the case was granted on February 26, 2003, effective March 26, 2003.

**C. Assignment of the Mortgage to Seattle Savings Bank**

RIHMFC assigned the Mortgage to Seattle pursuant to an agreement between RIHMFC and Seattle, dated April 30, 2003. (Exhibit 13 of Appellant's Record Designation). The assignment was dated October 31, 2002 and it was delivered to Seattle on June 2, 2003 and recorded in the Office of the Recorder of Deeds in the City of Providence on June 3, 2003. (Stipulated Fact Number 5, Joint Pretrial Order for Bankr. Ct., dated October 12, 2005). Judge Savage denied and dismissed with prejudice Appellant's claim that the assignment was null and void for lack of consideration or as violative of the automatic stay. (J. Savage Hr'g. Tr. at P. 4, Exhibit 9 of Appellant's Record Designation).

**D. Martin Malinou Becomes the Owner of the Property**

Etta Malinou died in January 2003. Martin Malinou was named Executor of his mother's estate and he also was devised the Property under the will. Upon the will being admitted to probate and proved by an affidavit, Martin Malinou became the owner of the Property.

Debtor has maintained his law office at the Property since 1960. (Stipulated Fact Number 2, Joint Pretrial Order for Bankr. Ct., dated October 12, 2005). At the time Etta

Malinou obtained the Mortgage, the Property had been used as part residence and part business for over thirty (30) years.

Martin Malinou obtained the Property subject to the outstanding Mortgage. Seattle sent a letter to Debtor on June 30, 2003, stating that it had purchased the loan from RIHMFC in June 2003, and that the Note by its terms was due and payable. Debtor failed to pay the Note in full and a demand letter and notice of foreclosure was sent on behalf of Seattle scheduling a foreclosure sale for October 15, 2003.

**E. Martin Malinou's First Chapter 13 Proceeding**

On or about October 10, 2003, five days prior to the scheduled foreclosure, Martin Malinou filed a Chapter 13 bankruptcy proceeding, which, pursuant to 11 U.S.C. § 362, stayed the foreclosure. (Exhibit 11 of Seattle's Designation of Record on Appeal). Within this proceeding, Debtor filed three (3) Chapter 13 plans, all of which were denied confirmation by the Court. The Chapter 13 bankruptcy proceeding was dismissed by order dated March 19, 2004. (Exhibit 10 of Seattle's Designation of Record on Appeal).

Seattle forbeared from acting against the Property from March 2004 through December 2004 (ten (10) months) to provide Debtor with an opportunity to pay the Note in full. Debtor failed to make payment to Seattle and Seattle again made demand and rescheduled the foreclosure sale for March 3, 2005.

**F. Martin Malinou's Second Chapter 13 Bankruptcy Proceeding**

On or about March 2, 2005, the day before the scheduled foreclosure, Martin Malinou filed a second Chapter 13 bankruptcy proceeding, which, pursuant to 11 U.S.C. § 362, again stayed the foreclosure. (Exhibit 9 of Seattle's Designation of Record on Appeal). Within this proceeding, Debtor filed a total of five (5) Chapter 13 plans, all of which were denied

confirmation by the Court. The case was dismissed with prejudice on October 12, 2005 and a dismissal order was entered on the docket on October 28, 2005 (the "Dismissal Order"). (Exhibit 8 of Seattle's Designation of Record on Appeal). Pursuant to 11 U.S. C. § 109(g) (2), Debtor was barred for a period of one hundred eighty (180) days (through April 26, 2006) from refilling another bankruptcy proceeding.

**G. Martin Malinou's First Action in Providence Superior Court**

Debtor failed to make any payments to Seattle after the entry of the Dismissal Order and Seattle again made demand upon Debtor on November 7, 2005, scheduling a foreclosure sale for January 11, 2006. Because Debtor was barred from commencing another bankruptcy proceeding to stay the foreclosure, pursuant to the Dismissal Order, Debtor commenced an action in Providence Superior Court seeking a temporary restraining order in order to stay the foreclosure sale. The temporary restraining order was granted by J. Fortunato, the foreclosure sale was again stayed and the Debtor proceeded to seek a preliminary injunction. On January 19, 2006, Associate Justice Judith Colenback Savage entered an Order granting consolidation, restraining Seattle from conducting a foreclosure sale, preserving Seattle's right to advertise the continuation of the foreclosure sale from time to time, and to take discovery.

After conducting a trial on the merits, Associate Justice Judith Colenback Savage announced her decision in open Court on March 27, 2006 in which she denied and dismissed with prejudice Counts I and II of Debtor's Amended Complaint and entered judgment in favor of Seattle. Count III of Debtor's Amended Complaint was denied and dismissed without prejudice. Count IV of Debtor's Amended Complaint, insofar as Debtor's declaratory relief to declare the assignment of the mortgage as null and void for lack of consideration or as violative of the automatic stay provisions of federal bankruptcy law, was denied and dismissed with prejudice

and judgment entered for the Defendant. The remainder of Count IV of Debtor's Amended Complaint was denied and dismissed without prejudice and judgment was entered for the Defendant. (Exhibit 7 of Seattle's Designation of Record on Appeal).

**H. Martin Malinou's Second Action in Providence Superior Court**

Debtor failed to make any payments to Seattle after Judge Savage's decision was entered and Seattle again made demand and noticed the foreclosure sale for December 12, 2006. On or about December 8, 2006, Malinou filed a complaint and motion for temporary restraining order to enjoin the foreclosure sale of the Property. After an extended hearing, Justice Fortunato denied Debtor's motion and authorized Seattle to proceed with its foreclosure sale of the Property on Tuesday, December 12, 2006. (Exhibit 1 of Seattle's Designation of Record on Appeal). After the hearing, the Debtor informed Seattle's counsel that he intended to file Chapter 13 on or about Monday, December 11, 2006 to stay the sale.

**I. Martin Malinou's Third Chapter 13 Bankruptcy Proceeding**

On or about Monday, December 11, 2006, on the eve of the scheduled foreclosure, Martin Malinou filed his third Chapter 13 Petition, which, pursuant to 11 U.S.C. § 362, stayed the foreclosure. (Exhibit 1 of Appellant's Record Designation). On December 11, 2006, Seattle filed a Motion for an Emergency Hearing pursuant to Local Bankruptcy Rule 9013-2(d) and (e) and an Emergency Motion for Relief from Stay to Foreclose on the Property. (Exhibits 23 and 24, respectively, of Seattle's Designation of Record on Appeal). Malinou filed an Objection to Seattle's Motion for Emergency Hearing. (Exhibit 22 of Seattle's Designation of Record on Appeal). The Court entered an Order permitting Seattle to continue the foreclosure sale and advertise said continuation. (Exhibit 5 of Appellant's Record Designation). The foreclosure sale was continued by Seattle to December 19, 2006 at 11:00 a.m. The Court scheduled a hearing on

Seattle's Motion for Emergency Hearing for December 13, 2006. After hearing argument and reviewing Debtor's written objection to Seattle's Motion, the Court granted said Motion and immediately proceeded to conduct the hearing on Seattle's Motion for Relief from Stay. After an extended evidentiary hearing before J. Votolato on December 13, 2006, the Court announced a bench decision in which it found:

a. The Bankruptcy Court adopted the arguments submitted in Seattle's pleadings and argued by its counsel;

b. The Bankruptcy Court found that there was no merit to, and Malinou failed to introduce any proof to support his allegations and defenses to Seattle's Motion for Relief;

c. The Bankruptcy Court granted Seattle's Emergency Motion for Relief; and

d. The Court denied Debtor's oral Motion for Stay Pending Appeal, leading to the within Emergency Motion for Stay Pending Appeal.

(Exhibits 2 and 3, respectively, of Seattle's Designation of Record on Appeal).

Appellant filed the within Emergency Motion for Stay Pending Appeal to stay the Order of the Bankruptcy Court entered on December 15, 2006, granting Seattle's Emergency Motion for Relief from Stay to foreclosure which is the subject of the Appellant's appeal before this Court.

## STANDARD OF REVIEW

Appellate courts reviewing an appeal from the bankruptcy court generally apply the clearly erroneous standard to findings of fact and apply the *de novo* standard of review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719-20 n. 8 (1st Cir. 1994). A bankruptcy court's decision to grant relief from automatic stay is reviewed for an abuse of discretion. *In re Bright*, 338 B.R. 530 (1st Cir. BAP 2006) (citing *Soares v.*

*Brockton Credit Union (In re Soares)*, 107 F.3d 969, 973 n. 4 (1st Cir. 1997)). A bankruptcy court abuses its discretion if it ignores "a material factor deserving of significant weight," relies upon "an improper factor" or makes "a serious mistake in weighing proper factors." *Id*. at P. 534. Debtor cites a Fifth Circuit case for the proposition that the bankruptcy court's determination is a legal determination subject to de novo review by the district court. The abuse of discretion standard of review, unquestionably applies to an appeal from a grant for relief from automatic stay within this Circuit. Under this standard, it is clear that the Bankruptcy Court's decision on Seattle's Emergency Motion for Relief from Stay must be upheld.

## ARGUMENT

**A. The Bankruptcy Court Did Not Abuse its Discretion in Granting Seattle's Motion for Emergency Hearing and Holding an Emergency Hearing on Seattle's Emergency Motion for Relief from Stay.**

Appellant presents a notice and due process issue to this Court with respect the emergency hearing on Seattle's Emergency Motion for Relief from Stay. Appellant claims he was "arbitrarily deprived," on short notice, of the automatic stay protections for persons filing Chapter 13 petitions and was not afforded "a meaningful opportunity to prepare for the emergency hearing". (Appellant's Issue Designation). He further claims that the Bankruptcy Court's decision was in "plain error since the Bankruptcy Rules require at least ten days notice to file an objection to a creditor request to lift the automatic stay." (Appellant's Brief at Page 7; Appellant's Objection to Emergency Hearing for Seattle Bank).

Seattle filed a motion for emergency hearing pursuant to Local Bankruptcy Rule 9013-2(e). Under this Rule, the 10-day notice provision does not apply where a movant presents justifiable grounds to request an emergency hearing. Responses to emergency motions can be

filed up to the time that the hearing is convened. Local Bankruptcy Rule 9013-2(d) (3). The Bankruptcy Court sets the conditions for the emergency hearing. Local Bankruptcy Rule 9013-2(d) (4).

The Bankruptcy Code defines the phrase, "after notice and a hearing" to be "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." *See* 11 U.S.C. § 102(1) (A). "Notice does not need to be perfect; it must be reasonable based upon the circumstances of the case." *In re Gonzalez-Ruiz*, 341 B.R. 371, 381 (1st Cir. BAP 2006). Appellant was provided reasonable and adequate notice under the circumstances, he prepared and filed a written objection to the Emergency Motion and was provided an opportunity to argue his objection to the Court and presented evidence to support his objection.

Rule 9006(c) of the Federal Rules of Bankruptcy Procedure provide that "the court for cause shown may in its discretion with or without motion or notice order the period reduced" within which an "act is required or allowed to be done." Further, Bankruptcy Rule 9007 gives the Bankruptcy Court the general authority to regulate "when notice is to be given . . . the time within which, the entities to whom, and the form and manner in which the notice shall be given."

Given the factual circumstances of this case and the Debtor's prior history before the Court, the Bankruptcy Court found that Seattle had shown a need for an emergency hearing on its Motion for Relief from Stay, warranting the shortened notice period. (Tr. of Hr'g. Bankr. Ct. at Pp. 6-7). The Court's decision was presumably based on the fact that a foreclosure sale was pending, which sale had been previously stayed by Appellant's actions numerous times in the past, dating back to 2000, and comes after eight (8) plan confirmation failures and two (2) prior case dismissals. (Tr. of Hr'g. Bankr. Ct. at Pp. 6-7). The Bankruptcy Court did not "arbitrarily

shorten" nor did the Court abuse its discretion in providing shortened notice of the emergency hearing to the Appellant. Appellant timely filed a written objection to Seattle's Emergency Motion; he was present at the *unabbreviated* emergency hearing and presented his best evidence and arguments to the Bankruptcy Court.

Appellant also claims that the Bankruptcy Court "arbitrarily denied" Appellant's oral motion to continue the emergency hearing to afford him an opportunity to produce witnesses and documentary evidence. The transcript of the Bankruptcy Court hearing shows that Appellant presented no changes in circumstance from those in his previous Chapter 13 filings and the Bankruptcy Court did not abuse its discretion in denying Appellant a continuance in light of the factual circumstances. At the hearing, the Appellant proffered no new grounds or evidence of his ability to pay off the mortgage at any price nor did he offer any adequate protection of the mortgagee's secured claim regardless of the value of the Property. The Bankruptcy Court's granting of Seattle's Emergency Motion for Relief from Stay was warranted based on Appellant's recurring efforts to stall and delay the foreclosure while he intentionally elected not to pay the Mortgage, the real estate taxes and the insurance for the Property for many years.

Appellant further claims that the Bankruptcy Court erred in allowing Seattle's exhibits to be admitted in evidence as full exhibits over objection, but failed to assert any legal basis for his position before the Bankruptcy Court or raise any basis on Appeal. Seattle argues that, in view of the totality of the circumstances, the evidence presented and Appellant's failure to proffer any legal basis or evidence to support his objections and following Rule 61 of the F. R. Civ. P., no error occurred. Rule 61 of the F. R. Civ. P. provides that "the court at every stage of the proceeding must disregard any error of defect in the proceeding which does not affect the substantial rights of the parties."

Appellant, on Page 12 of his brief, claims that he would have offered the HUD Handbooks as exhibits at the emergency hearing if he had a "meaningful opportunity to prepare". Seattle argues that the Bankruptcy Court's ultimate ruling on Seattle's Emergency Motion for Relief from Stay would not have changed even if the HUD handbooks were admitted into evidence. Further, the HUD related issues have been raised numerous times by Appellant in prior proceedings so his failure to come to court prepared and with exhibits or witnesses was Appellant's own decision not the Court's or Apellee's.

Based on the foregoing, Seattle prays that this Court will uphold the Bankruptcy Court's judgment order regarding its ruling on the Emergency hearing.

**B. When A Fact is the Subject of Reasonable Dispute Between the Parties, Judicial Notice Cannot Be Taken as to that Fact.**

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Appellant, at the hearing before the Bankruptcy Court, requested the Court to take judicial notice of a statement he alleges was made by RIMFHC in April 2002 that the Property in question had a value as a residence of $90,000.00. (Tr. of Hr'g. Bankr. Ct. at P. 25, Lines 9-13.) The Bankruptcy Court correctly denied Appellant's request for judicial notice as there was no basis for the Court to take judicial notice of such a statement. (Id. at P. 25, Lines 19-23.) The present value of the Property is the subject of a present dispute between the parties and judicial notice as requested by Appellant is inappropriate based on this current valuation dispute and Fed. R. Evid. 201(b). This is another failed attempt of the Appellant to pin down an improper valuation of the Property, no matter how remote in time the non-expert opinion of valuation actually might be for purposes of considering valuation of the same collateral in

December, 2006. [It is important to note that Appellant entered into a Joint Pretrial Order with Appellee in October 2005 and stipulated that the value of the Property was $230,000.00 (the "JPTO")]. The Appellant's arguments for a $90,000.00-$100,000.00 valuation are blatantly transparent, are impossible to support, are a deliberate misstatement of facts by an officer of the court, a practicing member of this bar and should not be permitted.

Appellant, on Page 6 of his brief to this Court, attempts to demonstrate that he made an offer to pay off of the Mortgage in full in a letter dated March 14, 2006. (Exhibit 17 of Appellant's Record Designation). Appellant neglects to mention the most important assertion in his letter that he suggests the value of the Property for the purposes of his proposed purchase to be less than $100,000.00.

A more realistic value for the Property can be seen by reviewing all of the facts. In 1991, Appellant's mother listed the Property as valued at $168,000.00 on her loan application to RIHFMC. In 2003, Appellant listed the Property as having a value of $160,000.00 on Schedule A of his Chapter 13 Schedules. In 2005, Appellant listed the value of the Property as $350,000.00 on Schedule A of his Chapter 13 Schedules. Appellant stipulates to the value of the Property on the JPTO as having a then present market value of $230,000.00. This valuation was based upon Appellant's own appraiser (United Appraisal) who conducted an appraisal of the Property in the Bankruptcy proceeding on March 18, 2005. Despite the value, Appellant agreed to it in the JPTO and as provided by his own appraiser, wherein he valued the Property as of October 12, 2005 as $230,000.00. Appellant's letter to HUD in March of 2006, Appellant represented the value of the Property to be $100,000.00. Appellant is now arguing that the value of the Property is less than $100,000.00 for purposes of his current 2006 Bankruptcy Schedules. The City of Providence's current assessment of the value of the Property is $220,000.00. Seattle

argues that as of 2005, the value of the Property was $230,000.00 and therefore it is likely that the value of the Property has increased to over $230,000.00.

Clearly, the valuation of the Property is disputed and judicial notice cannot be taken with respect to an obviously incorrect opinion of the valuation of the Property provided in 2002. Furthermore, valuation made for one purpose in a bankruptcy proceeding is not *res judicata* as to later valuation in the same bankruptcy proceeding for different purposes. *Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1204 n. 5 (1st Cir. 1995); *In re Smithfield Estates, Inc.*, 52 B.R. 220 (Bankr. D.R.I. 1985). Valuation in 2002 does not control valuation in 2006 in a different proceeding.

**C. The Filing of a Proof of Claim is Not a Requirement for a Creditor to Seek Relief from the Automatic Stay Protections of the Bankruptcy Code.**

Appellant claims that Seattle does not have standing to seek relief from stay without previously filing a proof of claim. Seattle does have standing to seek relief from automatic stay without filing a proof of claim. Filing a proof of claim is not mandatory. *See Couture v. Pawtucket Credit Union*, 765 A.2d 831, 836 (R.I. 2001) ("Although 11 U.S.C. § 501(a) states that a creditor '*may* file a claim,' its history confirms that this is not a mandatory provision.") (Emphasis in original). Section 501 of the United States Bankruptcy Code, which governs proofs of claims, "is permissive only, and does not require filing of a proof of claim by any creditor." H.R. Rep. No. 95-595 at 351 (1977). The purpose of filing a claim is to protect the creditor's interest in the bankruptcy estate. The result of failing to file a claim is that the creditor will not be allowed to make any claims against the bankruptcy estate. There is no requirement under United States Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, that a creditor must file a proof of claim in order to proceed with a motion for relief from stay. 11 U.S.C. § 362 and Fed. R. Bankr. P. 4001.

Furthermore, Rule 3002(c) of the Federal Rules of Bankruptcy Procedure provides that a "proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code. . .". The first meeting of creditors in the instant matter occurred on February 2, 2007 and the bar date for creditors to file proofs of claim is May 3, 2007. Therefore, it is permissible for Seattle to file its claim up to and including May 3, 2007.

Appellant has also listed Seattle's claim on all three (3) of his filed bankruptcy schedules and it was also listed in his mother's schedules, under oath, as secured. Furthermore, Appellant failed to challenge or object to the validity or the priority of Seattle's claim during the last five (5) years in three (3) previous proceedings before the Bankruptcy Court or in the two (2) proceedings before the Rhode Island Superior Court.

**D. Appellant Cannot Raise Issues for the First Time on Appeal.**

Appellant sets forth numerous issues in his Appeal which were not raised in his objection to Seattle's Emergency Motion for Relief from Stay, before the Bankruptcy Court, nor did the Bankruptcy Court address or rule on these issues. Appellant may not now raise these issues in his appeal to this Court. Appellant raises the following issues (1) that the Property is not the only security interest available to the holder of the mortgage under the loan documents; (2) what did Seattle know concerning the failure of Fannie Mae to use acceptable accounting principles in its reverse mortgage portfolio, and when did Seattle know it; and (3) what did Seattle know concerning the use of signatures on Fannie Mae documents, when did Seattle know it. Again, Appellant has *never* raised any of the above issues before the Bankruptcy Court, or in his objection to the Motion for Relief, and therefore, it is entirely inappropriate and improper for Appellant to raise these issues for the first time on appeal. Seattle will not address any of these

issues in its brief as they are not proper issues on appeal before this Court nor were they addressed in Appellant's Brief.

**E. Appellant Misconstrues 24 C.F.R. § 206.125 to Permit Payment to Seattle of $95,000.00, in Full Satisfaction of its Mortgage.**

**1. Appellant is Misguided in Relying on the Old Code of Federal Regulations and HUD Handbook.**

Appellant's premise under his Chapter 13 proceeding is that he has the right to compel Seattle to accept ninety five percent (95%) of the appraised value of the Property as a full payoff of its outstanding Mortgage. This appraised value, Appellant refers to is a value determined conjunction with a mortgagor's sale of the Property to a third party. The appraisal is to be conducted by a HUD certified appraiser, HUD does not actually conduct the appraisal itself nor is required under 24 C.F.R. 206.125(b). Appellant, in claiming that HUD itself must conduct an appraisal of the Property incorrectly relies on the old Code of Federal Regulations and HUD Handbooks which are no longer the controlling authority for "reverse mortgages". A HUD certified appraiser is authorized to determine the value of the Property. Appellant's 2005 appraiser, United Appraisal, is a HUD certified appraiser. Based upon the 2005 appraisal, the value of the Property is at least $230,000.00, but likely more today.

**2. Appellant Cannot Sell to Himself that which he Already Owns.**

Appellant's mother passed away in January 2003, leaving the Property to pass to Appellant pursuant to the terms of her will, subject to the Mortgage of Seattle. Pursuant to R.I.G.L. § 33-6-31, title to real or personal property shall pass by will when the will has been finally proved not when the estate is fully probated or closed. It is Seattle's understanding that the will of Etta Malinou was admitted to probate and proved by an affidavit as contemplated by

R.I.G.L. § 33-7-26. Therefore, under the Rhode Island General Laws, Appellant is the owner of the Property despite Etta Malinou's Estate continuing to remain open.

Appellant, as owner of the Property, is not attempting to sell the Property to a third party as required by Section 206.125 of the Code of Federal Regulations. Appellant's argument is based upon his attempt to sell the Property to himself. This is clearly impossible, because he is already the owner of the Property. Appellant cannot sell something to himself that he already owns.

Appellant has not presented a purchase and sale agreement or even disclosed in three (3) bankruptcy proceedings that there is a third party buyer. He has crafted a hypothetical argument, attempting to use the HUD regulations to force the Appellee to accept a payment of ninety-five percent (95%) of the appraised value of the Property in full satisfaction of the mortgage balance. Section 206.125 of the Code of Federal Regulations does not contemplate a sale by an owner to himself for purposes of cramming down the mortgage. Further, even if Appellant could be construed as a buyer, under the current and ongoing circumstances, he has never presented, nor does he presently present any evidence of his ability to pay to Seattle the 95% of the current fair market value of the Property.

Ninety-five percent (95%) of this value would require Appellant to pay at least \$200,000.00 to Seattle. Appellant has previously stipulated in Bankruptcy Court in 2005 that the real estate had a present market value of \$230,000.00 and the market value of the land alone was \$90,000.00. The tax assessor's records also show the value of the Property to be \$220,000.

Appellant also argues that he is entitled to payoff the Mortgage in full with a payment of 95% of a valuation of the Property as a "single family residence." The Code of Federal Regulations does not require a valuation as a "single family" residence. The Property has not

been used exclusively as a single family residence since 1960, so the Property should not be artificially and incorrectly be valued as a single family residence. Rather, the appraisal should be part commercial as reflected by the use of the Property.

**F. Seattle's Interest Is Not Being Adequately Protected.**

Appellant's brief completely fails to address the issue and the Court's ruling on the Debtor's failure to provide any evidence of adequately protecting Seattle's position under 11 U.S.C. § 362, that finding being the basis for the Court's ultimate ruling on Seattle Emergency Motion for Relief from Stay. Through a series of well intentioned events, including filing bankruptcies, temporary restraining orders and appeals, Appellant has remained in possession of this Property at virtually no costs. He has not paid any real estate taxes since approximately 2000, has not paid any principal or accruing interest on Seattle's Note since 2000, and has not paid any property insurance since 2003. Appellant has enjoyed the benefit of living for free this fourteen (14) room home and utilized the Property to conduct his law practice for many years, free of payment of any secured debt, real estate taxes or insurance. In view of these facts and that the claim of Appellee is presently approximately $300,000.00; the value of the Property is less than $300,000.00 and depreciating daily. Seattle's interest is not being adequately protected. Appellant has proffered absolutely no evidence to the contrary.

## <u>CONCLUSION</u>

Based on the foregoing, Seattle prays that this Court will uphold the Bankruptcy Court's judgment order and allow Seattle to proceed with its foreclosure sale of the Property and grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

SEATTLE SAVINGS BANK

By its Attorneys,

DATE: February 12, 2007

/s/ Peter J. Furness (#3608)
Benjamin M. Scungio (#2902)
Lauren F. Verni (#6831)
Brennan, Recupero, Cascione, Scungio & McAllister
362 Broadway
Providence, RI 02909
453-2300
Fax: 453-2345

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Reply Brief was sent via facsimile and first class mail to the following on this the 12th day of February, 2007:

Electronic Mail Notice List – Parties in the case only

The following is the list of parties who are currently on this list to receive e-mail notice/service for this case.

Manual Notice List – Parties in the case only

The following is the list of parties who are not on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service).

Martin S. Malinou
334 Smith Street
Providence, RI 02908
401-331-6554
Fax: 401-331-6554
Email: mmalinou@net1plus.com

/s/ Peter J. Furness, Esq.